

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| ROBIN STAHL,<br>　　　　Respondent, | )<br>)<br>) | No. ED103466 |
| vs. | )<br>) | |
| HANK'S CHEESECAKES, LLC,<br>　　　　Appellant, | )<br>) | Appeal from the Labor and<br>Industrial Relations Commission |
| and | )<br>) | |
| DIVISION OF EMPLOYMENT SECURITY,<br>　　　　Respondent. | )<br>) | FILED:  May 10, 2016 |

### Introduction

The Labor and Industrial Relations Commission ("the Commission") granted the respondent, Robin Stahl ("Stahl"), unemployment benefits after it found that she was discharged from her employment by appellant Hank's Cheesecakes ("Hank's").  Hank's appeals, arguing that the Commission erred in awarding Stahl unemployment benefits because she was terminated for misconduct by intentionally striking a co-employee.  The Commission found that Stahl's conduct, while a justification for her termination, did not rise to the level of misconduct warranting her disqualification of unemployment benefits.  The issue presented by this appeal is whether an employee's conduct of intentionally striking a fellow employee on company time and on the company's premises necessarily constitutes misconduct that disqualifies the employee

from unemployment benefits. Because Stahl's action in hitting her co-employee did not violate an express work rule of Hank's, and, when considering the context of the incident, did not demonstrate a disregard of the standard of behavior which Hank's had the right to expect of her, we find no reversible error in the Commission's decision and affirm the award of benefits to Stahl.

## Factual and Procedural History

Hank's is a small, family business located in St. Louis County, Missouri. Stahl was employed as an assistant baker at Hank's from November 12, 2014, to April 8, 2015. On April 7, 2014, Stahl was talking with a co-worker, Cari Dalton ("Dalton"), in her work area when Mike Jones ("Jones"), another co-worker, walked by Stahl and Dalton and said, "Are you talking about getting sand in your vagina again?" Both Dalton and Stahl heard the comment. Stahl claimed to be offended by the remark and immediately responded by hitting Jones with the back of her hand on his buttocks. Stahl claims that she instinctively responded to Jones's remark which she found vulgar and inappropriate. Jones characterized the striking as "more malicious than just a love tap," and as an attempt by Stahl to punish him "like a mother would smack their child if they did something wrong." Dalton, the person to whom the comment was directed, said that she was not offended by the comment, but that Stahl was offended and angry, and that Stahl hit Jones in the buttocks "pretty hard" with a pan. The incident lasted about three to four seconds. Stahl was discharged from her employment on April 8, 2014, for physically hitting Jones and lying about the incident that occurred on Tuesday, April 7, 2015.[1]

Stahl timely filed for unemployment benefits. Hank's filed a written protest of Stahl's claim for benefits on the grounds that Stahl was discharged for misconduct in connection with

---

[1] On appeal, Hank's addresses only the Commission's findings with regard to Stahl having struck another employee, and does not raise any issue regarding the Commission's findings regarding the other reasons for Stahl's discharge.

2

her employment. A deputy for the Missouri Division of Employment Security ("the Division") determined that Stahl was not disqualified from receiving unemployment benefits because she was discharged on April 8, 2015, but not for misconduct connected with the work. Hank's appealed the deputy's determination to the Division's Appeals Tribunal. A hearing was held by means of a telephone conference on June 18, 2015. The hearing was continued to July 9, 2015, at which time it was concluded. The Appeals Tribunal affirmed the deputy's determination and found that "[t]he claimant is not disqualified for benefits by reason of the claimant's discharge from work on April 8, 2015."

Hank's appealed the decision of the Appeals Tribunal to the Labor and Industrial Relations Commission, which affirmed and adopted the Decision of the Appeals Tribunal. Hank's now appeals to this Court.

## Point on Appeal

Hank's raises only one point on appeal. Hank's contends that the Commission erred in affirming the award of unemployment compensation benefits to Stahl because there is insufficient competent evidence to support the award as the facts demonstrate that Stahl was guilty of misconduct when she intentionally struck a co-employee in anger.

## Standard of Review and Burden of Proof

Article V, section 18 of the Missouri Constitution provides for judicial review of the Commission's decisions to determine whether they "are supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. Under Section 288.210[2]:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

---

[2] All Statutory references are to RSMo (2000), unless otherwise noted.

3

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award. An appeal shall not act as a supersedeas or stay unless the commission shall so order.

"Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 223 (Mo. banc 2003). "This Court defers to the Commission on issues involving the credibility of witnesses and the weight given to testimony," Johnson v. Denton Const. Co., 911 S.W.2d 286, 288 (Mo. banc 1995), but in so doing we do *not* view "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." Hampton, 121 S.W.3d at 223. This Court reviews questions of law *de novo,* and "[w]hether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law." Fendler v. Hudson Servs., 370 S.W.3d 585, 588–89 (Mo. banc 2012) (internal citations omitted).

When the Commission adopts the decision of the Appeals Tribunal, the Court of Appeals considers the Appeals Tribunal's decision to be the decision of the Commission for purposes of review. White v. St. Louis Teachers Union, Div. of Emp't Sec., 217 S.W.3d 382, 389 (Mo. App. W.D. 2007).

"In general, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." White v. Div. of Emp't Sec., 431 S.W.3d 583, 586 (Mo. App. W.D. 2014) (internal

4

citations omitted). As a result, Hank's had the burden of proving by a preponderance of the evidence that Ms. Stahl was fired for misconduct. Id.

## Discussion

A claimant is disqualified from receiving unemployment benefits if he was discharged for misconduct connected with work. Section 288.050.2 (Cum. Supp. 2015). Misconduct is defined as:

> [C]onduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:
>
> (a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;
>
> (b) Conduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer;
>
> (c) A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such absences are protected by law;
>
> (d) A knowing violation of a state standard or regulation by an employee of an employer licensed or certified by the state, which would cause the employer to be sanctioned or have its license or certification suspended or revoked; or
>
> (e) A violation of an employer's rule, unless the employee can demonstrate that:
>
> > a. He or she did not know, and could not reasonably know, of the rule's requirements;
> >
> > b. The rule is not lawful; or
> >
> > c. The rule is not fairly or consistently enforced.

Section 288.030.1(23) (Cum. Supp. 2015). The facts are not disputed that Stahl struck a co-worker in the workplace in an immediate response to a vulgar remark made by that co-worker. The entire incident was brief, occurring in a matter of seconds. While there is some discrepancy

in the testimony as to whether Stahl struck Jones with the back of her hand or a kitchen pan, the referee found Stahl's testimony more credible than the witnesses presented by Hank's. The referee found that Stahl attempted to slap Jones on his hip with her hand, but inadvertently hit him on the buttocks. Hank's posits that regardless of whether Stahl struck Jones with her hand or a kitchen pan, Stahl's intentional striking of a co-worker in the workplace demonstrates "a knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee" and therefore constitutes misconduct under Section 288.030.1(23)(a). We disagree.

While we do not suggest that intentionally striking a co-employee in the workplace may never constitute disqualifying misconduct as defined by Missouri statute, we are not inclined to announce or impose a bright-line test as suggested by Hank's that any deliberate touching of a co-employee necessarily qualifies as misconduct under Missouri law. To the contrary, we hold that an appropriate analysis of whether an employee's physical actions towards a co-worker constitute misconduct require a thorough review of the totality of the facts and circumstances of the incident as well as the context in which the incident occurred.

The record is devoid of any evidence that Hank's had in place a rule or policy addressing physical contact between employees. For that reason, Stahl's conduct cannot be deemed misconduct under Section 288.030.1(23)(e) as a "violation of the employer's rule." Instead, we review Hank's claims of employee misconduct under the proscriptions of Section 288.030.1(23)(a), which characterizes misconduct as encompassing an employee's "knowing

6

disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee."[3]

Stahl intentionally struck her co-worker. Hank's argues that this intentional act indisputably violates the standard that an employer expects from its employees, regardless of the motivation. Hank's challenges the referee's findings, adopted by the Commission, that because Stahl struck her co-worker "in the heat of the moment" and had no "knowing intent" that Stahl did not "intend or realize" that she was violating standards which her employer rightfully expected of her. Hank's suggests that our treatment of misconduct under Section 288.030.1(23)(a) should reflect a zero-tolerance for any type of unwelcome touching by one co-worker of another co-worker. We are not persuaded that Missouri's unemployment compensation statutes are drafted so broadly as to preclude our consideration of the totality of the circumstances and facts attendant to the situation when examining the issue of employee conduct in light of standards which an employer may rightfully expect of its employees. Tamko Bldg. Products, Inc. v. Pickard, 443 S.W.3d 68, 73 (Mo. App. S.D. 2014) ("The determination of misconduct is dependent on the facts and circumstances of each case."); Richardson v. Div. of Emp't Sec., 361 S.W.3d 425, 430 (Mo. App. W.D. 2011) ("while sleeping on the job certainly can constitute misconduct related to work in many, if not most, situations, such a determination is dependent on the facts and circumstances of each case").

An employer is free to establish a clear-cut and well defined policy regarding employee misconduct that is not subject to further scrutiny by the courts by having written rules setting forth such a policy. See Section 288.030.1(23)(e) (violation of an employment rule is misconduct unless the employee can demonstrate that (a) the employee did not know, and could

---

[3] Hank's acknowledges in its brief that because Hank's did not have formal written disciplinary procedures, the only sub-paragraph of Section 288.030(23) that applies in this matter is an employee's knowing disregard of the Appellant's interest or of the standards that Appellant expected of its employees.

7

not reasonably know, the rule's requirements; (b) the rule is not lawful; or (c) the rule is not fairly or consistently enforced). Here, the absence of any pronounced employer policy requires this Court to consider Stahl's conduct in light of the more general prohibition of violating standards that the employee knows are expected of her. We are unwilling to conduct a review of an employee's understanding of an employer's expectations without considering the attendant impact of the facts and circumstances at play. Neither party has presented any case law suggesting that judicial review of the circumstances surrounding the conduct at issue is inappropriate or beyond the scope of our authority.

Because there is no Missouri case law directly on point, Hank's offers judicial authority from outside Missouri to advance its proposition that any act of aggressive physical touching of a co-worker, regardless of the provocation, constitutes disqualifying misconduct under state laws regulating unemployment benefits. Hank's analysis and the thrust of its argument misses the point. We agree that acts of violence against co-workers or supervisory employees are *generally* deemed misconduct and that provocation in the form of insulting or abusive language does not excuse an act of violence. 76 Am. Jur. 2d Unemployment Compensation §83 (2015). However, the record before us does not present facts that we deem to constitute a form of "violence" that Stahl reasonably should expect would violate the standard of conduct Hank's expected of her. Hank's oversimplifies its analysis by suggesting that the only issue before us is whether an employee commits misconduct in the workplace when he or she strikes a co-employee in anger because the employee does not like what the co-employee has said. Without taking into account the totality of the circumstances, we cannot possibly know if *the employee knowingly runs afoul of the standards that the employer expects of her.* Hank's argument discards an essential requirement for employee misconduct under sub-paragraph (23)(a)—that the employee

8

**knowingly** disregards the employer's interest or **knowingly** violates the employer's standards. To fully and fairly analyze what Stahl knew that her employer expected of her in this situation, we must consider more than just the fact that Stahl intentionally struck her co-worker in anger.

Here, the entire episode lasted but a few seconds. The facts as determined by the referee show that Stahl gave a quick backhanded slap to her co-worker in response to a vulgar, obscene and sexist comment that caused no harm to the co-worker, other than perhaps embarrassment. Hank's argument that this conduct constitutes violence in the workplace is unavailing. Stahl did not make a fist. She did not strike or attempt to strike her co-worker in a place on his body or with such force as to intend to cause any type of physical injury. The record does not suggest that Stahl acted with extreme roughness or an intense display of force. Stahl simply made a backhanded swat on the rump of a rude co-worker. The word "violent" is defined in Black's Law Dictionary 1706 (9th ed. 2009), as:

> 1. Of, relating to, or characterized by strong physical force <violent blows to the legs>. 2. Resulting from extreme or intense force <violent death>. 3. Vehemently or passionately threatening <violent words>.

We decline to construe Stahl's conduct as "violent" given these circumstances. The record does not demonstrate the level of intensity or roughness to suggest that Stahl could reasonably expect her back-handed swat on a co-worker's rump would violate her employer's expectations of no workplace violence.[4]

Hank's argues in its brief that Missouri employers must be given the tools to avoid a situation where their employees believe it is acceptable for them to take matters physically into

---

[4] We are not persuaded by the out-of-state authority cited by Hank's to abandon our analysis of the facts and circumstances surrounding the incident between Stahl and her co-worker. A few of the cases provided by Hank's construe the application of a specific employment rule, which is not at issue here. See Baca v. Marriott Hotels, Inc., 732 P.2d 1252, 1253 (Colo. App. 1986); Wolfe v. Unemployment Comp. Bd. of Review, 425 A.2d 1218, 1219 (Pa. Commw. Ct. 1981). Another out-of-state case cited by Hank's provides support to our holding by considering the facts of the case and concluding that the Commission's decision about whether an employee's actions constitute misconduct "is entitled to great weight deference." Lopez v. Labor and Indus. Review Comm'n, 642 N.W.2d 561, 567 (Wis. Ct. App. 2002).

9

their own hands to resolve differences with others in the workplace, and the latitude to use those tools. We agree. Employers have those tools by providing their workforce with express rules and workplace policies. In the absence of express rules and policies, the latitude employed by the employer, and this Court, must involve a healthy dose of common sense when discerning whether an employee's conduct runs afoul of an employer's expected standards.[5]

## Conclusion

When reviewing the totality of the record before us, we find that the Commission's findings are supported by competent and substantial evidence. Stahl's conduct in striking her co-worker did not rise to the level of disqualifying misconduct because her actions did not disregard the standards that Stahl should reasonably know Hank's expected of her. The judgment of the Commission is affirmed.

_____
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa P. Page, J., dissents in separate opinion.

---

[5] Unlike the dissent, we are not persuaded that the 2014 amendments to Section 288.030 abrogate our duty to consider the totality of the facts and circumstances in determining the presence of misconduct, which under the subsection at issue here, requires proof of Stahl's "*knowing*" violation of a supposed employer standard *that has not been articulated or disseminated to the employee in any form*. The dissent suggests the introduction of a bright-line rule of *per se* misconduct whenever an employee intentionally touches another employee in anger. While that approach is consistent with the Golden Rule, we find no basis in the case law or the legislative revisions to support this overly broad approach under the statutory scheme of Section 288.030. The dissent's view as to what conduct is "universally and fairly" understood as inappropriate may not reflect the views of others, and simply does not establish the existence of a known but uncommunicated employer standard. As noted by the dissent, conduct deemed inappropriate is likely to have "a wide array of consequences." Here, one consequence was Stahl's discharge. But there exists a wide gulf in the continuum of conduct justifying discharge and justifying the forfeiture of unemployment benefits. See, Frisella v. Duester Elec., Inc., 269 S.W. 3d 895,899 (Mo. App. E.D. 2008) citing Hoover v. Cmty. Blood Ctr., 153 S.W.3d 9, 13 (Mo. App. W.D. 2005) (internal quotations omitted). Before we may impose the further consequence of denying Stahl unemployment benefits, the language of the statutes and established judicial authority require this Court to consider the totality of the circumstances, and to decline the *per se*, zero-tolerance rule suggested by the dissent.

10



# In the Missouri Court of Appeals
# Eastern District

DIVISION FOUR

ROBIN STAHL,                                    )
                                                )   No. ED103466
          Respondent,                           )
                                                )   Appeal from the Labor and
vs.                                             )   Industrial Relations Commission
                                                )
HANK'S CHEESECAKES, LLC,                        )   Filed:  May 10, 2016
                                                )
          Appellant,                            )
                                                )
and                                             )
                                                )
DIVISION OF EMPLOYMENT SECURITY,                )
                                                )
          Respondent.                           )

DISSENT

I respectfully dissent and would reverse the decision of the Commission.

For over sixty years, the explicit purpose of the Missouri Employment Security Law, Section 288.010, *et seq*., has been to provide economic stability for the citizens of Missouri who have become unemployed "*through no fault of their own*." Lindsey v. Univ. of Mo., Div. of Emp't Sec., 254 S.W.3d 168, 171 (Mo. App. W.D. 2008) (emphasis added); see also Section 288.020.1, RSMo 1951.  A claimant is ineligible and disqualified from receiving unemployment benefits if said claimant "*caused* his dismissal by his wrongful action or inaction or his choosing not to be employed." Ayers v. Sylvia Thompson Residence Ctr., 211 S.W.3d 195, 198 (Mo.

App. W.D. 2007) (emphasis in original). A claimant is ineligible for unemployment benefits if the claimant was "discharged for misconduct connected with claimant's work[.]" Section 288.050.2, RSMo Cum. Supp. 2015. Initially, the claimant bears the burden of proving his or her right to receive unemployment benefits; however, when an employer asserts that the claimant was discharged for "misconduct," the burden shifts to the employer to prove, by a preponderance of the evidence, claimant is ineligible for "misconduct connected with work." Seck v. Dep't of Transp., 434 S.W.3d 74, 82 (Mo. banc 2014).

"The determination of whether an employee is discharged for misconduct connected with work is a question of law that we review de novo." Williams v. Enter. Rent-A-Car Shared Servs., LLC, 297 S.W.3d 139, 142 (Mo. App. E.D. 2009); McClelland v. Hogan Pers., LLC, 116 S.W.3d 660, 664 (Mo. App. W.D. 2003) ("Whether the Commission's findings support the conclusion that an employee was guilty of misconduct is a question of law.").

The principal opinion correctly notes that Hank's allegation of employee misconduct must be examined under the auspices of Section 288.030.1(23)(a), RSMo Cum. Supp. 2015, which reads as follows:

> **"Misconduct"**, only as the term is used in this chapter, conduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:
>
> (a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee[.]

(emphasis in original).

I believe the Appeals Tribunal Determination, as adopted by the Commission, misconstrued this statutory language as follows:

> The claimant credibly testified that she did not mean *to hit the co-worker on the butt* and had no malicious intent in striking him. The claimant merely *smacked*

2

*the coworker in the heat of the moment* and had no knowing intent. This innocuous act was certainly poor judgment, but the Tribunal would not find that it was a knowing violation of the standards which the employer expects. The claimant did not intend or realize she was violating those standards (emphasis added).

As the principal opinion observes, there exists no Missouri case directly on point to answer the question whether Stahl's "deliberately striking a co-employee" constituted "misconduct" under Section 288.030.1(23)(a). In the absence of precedent this court reverts to statutory interpretation. Pursuant to the most recent amendment to the governing statute, I believe our analysis of misconduct is simply whether Stahl's conduct constituted "a knowing violation of the standards which the employer expects" and that Stahl's "deliberately striking a co-employee" constitutes misconduct, as a matter of law, under Section 288.030.1(23)(a).

In Seck v. Department of Transportation, 434 S.W.3d 74 (Mo. banc 2014), the Supreme Court of Missouri determined "even in the absence of an oral or written rule, an employee commits misconduct . . . if (s)he disregards the 'standards of behavior which the employer has a right to expect' from its employees." Seck, 434 S.W.3d at 83 (quoting in part Section 288.030.1(23), RSMo Cum. Sum. 2004)). The Missouri Supreme Court went on to define "standards of behavior which the employer has a right to expect" as those standards "that apply *universally* in the workplace" and "which no such notice is needed because they are *fairly* understood by both the employer and the employee even where not included in the employer's express rules." Seck, 434 S.W.3d at 83 (emphasis added).

I believe "deliberately striking a co-employee," especially in anger, as Stahl did in this case, is *universally* and *fairly* understood by both employers and employees alike to be inappropriate work-related conduct. Stahl's claim that she did not *know* "deliberately striking a co-employee" in anger is without merit. In Missouri, we find employers are "entitled to expect

3

that its employees will not falsify medical certificates[,]" Seck, 434 S.W.3d at 84, and we hold "the idea that sleeping on the job is anything other than misconduct is absurd[,]" Nickless v. Saint Gobain Containers, Inc., 350 S.W.3d 871, 874 (Mo. App. E.D. 2011). I believe "deliberately striking a co-employee" is similar misconduct.

Every kindergartener is taught that deliberately striking another individual is inappropriate and subjects one to a wide array of consequences. Furthermore, Stahl's conduct was of such a nature as to subject Stahl to criminal and/or civil penalties. See, e.g., Section 565.070 (criminal statute for assault); Armoneit v. Ezell, 59 S.W.3d 628, 632 (Mo. App. E.D. 2001) ("A battery is the willful touching of the person of another, and has been said to be the consummation of the assault.") (citations omitted). Failure to understand the ramifications of such conduct is not a defense either in criminal or tort law and should not be tolerated in the workplace.

Specifically, Stahl should not be permitted to cloak her ignorance of universally and fairly understood standards of behavior which every employer has a right to expect of its employees under the guise of naiveté. When Stahl "deliberately" struck a co-employee, no matter her provocation, she performed "misconduct" as defined by Section 288.030.1(23)(a), and said "misconduct" should disqualify her from receiving unemployment benefits.

Unlike the principal opinion's analysis, I believe a review of the legislative history requires a broader interpretation of misconduct. For decades Missouri law did not define "misconduct" by statute; rather the definition of "misconduct" was determined by the courts. See, e.g., Powell v. Div. of Emp't Sec., Labor and Indus. Relations Comm'n of Mo., 669 S.W.2d 47, 50 (Mo. App. W.D. 1984) (quoting 76 Am.Jur.2d Unemployment Compensation § 52 (1975)) ("[M]isconduct within the meaning of an unemployment compensation act excluding

4

from its benefits an employee discharged for misconduct must be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or the employee's obligations to the employer.").

In 1997, without defining "misconduct," the Missouri Legislature began augmenting the common law definition by statutorily embracing "absenteeism" as a means to find misconduct. See Mo. H.B. 472 (1997); see also Section 288.050, RSMo Cum. Supp. 1997 ("A pattern of absenteeism or tardiness may constitute misconduct regardless of whether the last incident alone which results in the discharge constitutes misconduct."). In 2004, the Missouri Legislature definitively and statutorily defined "misconduct." See Mo. H.B. 1268 (2004).

Initially the statute defined "misconduct" as "an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." Section 288.030.1(24), RSMo Cum. Supp. 2004.

Finally, in 2014, the definition of "misconduct" was, again, amended. See Mo. S.B. 510 (2014). The principal opinion sets forth, *in toto*, the statutory definition of "misconduct" as amended and as it currently reads. See Section 288.030.1(23).

This legislative history strongly suggests an intent to expand those acts which fall under the umbrella of "misconduct." For example, a "*knowing* disregard of the employer's interest[,]"

Section 288.030.1(23), RSMo Cum. Supp. 2015 (emphasis added), is broader than "an act of *wanton or willful* disregard of the employer's interest[,]" Section 288.030.1(23), RSMo Cum. Supp. 2004 (emphasis added). Compare WILLFUL MISCONDUCT, Black's Law Dictionary (10th ed. 2014) ("Misconduct committed voluntarily and intentionally.") with KNOWING, Black's Law Dictionary (10th ed. 2014) ("Having or showing awareness or understanding; well-informed . . . ."). Expanding this specific example, under the 2004 amendment, the employer was required to demonstrate both that claimant was "[1] aware of the requirement and [2] knowingly or consciously violate[d] it." Tenge v. Wash. Grp. Intern., Inc., 333 S.W.3d 492, 497 (Mo. App. E.D. 2011).

Although current jurisprudence is lacking—possibly caused by the recent 2014 amendment—the legislative intent of the statute is clear. Parktown Imp., Inc. v. Audi of Am., Inc., 278 S.W.3d 670, 672 (Mo. banc 2009) ("This Court's primary rule of statutory interpretation is to give effect to the legislative intent as *reflected in the plain language of the statue at issue*.") (emphasis added). Section 288.030.1(23)(a) merely requires the employer to evidence "a knowing violation of the standards which the employer expects" and does not permit an examination of the innocuousness of the smack, whether the smack caused injury, whether the smack was violent, or the length of time of the "episode." Cf. Section 288.030.1(23)(e) (prescribing exceptions to employee's violation of employer's express rules).

Moreover, our Missouri statute does not provide for any exceptions found in other jurisdictions, such as "good cause" or "hothead" exceptions. See, e.g., Potter v. N. Empire Pizza, Inc., 805 N.W.2d 872 (Minn. App. 2011) (tracing the history of Minnesota's judicially created "isolated hothead incident" and the ultimate statutory exclusion thereof). The Missouri Legislature is obviously adept at amending the statutory definition of "misconduct." If the

6

Legislature intended for courts to examine that which has been examined by the Commission and the principal opinion, the Legislature would have explicitly so prescribed; however, in electing not to prescribe, it can only be inferred that said omissions were purposeful. State ex rel. Nothum v. Walsh, 380 S.W.3d 557, 567 (Mo. banc 2012) ("It is cardinal rule of statutory interpretation that the legislature is presumed to know the existing law when enacting a new piece of legislation.") (internal citations omitted).

Finally, I acknowledge that the obnoxious comment that provoked Stahl was completely inappropriate in the workplace. In fact, had Stahl properly reported the comment, the employer would have been greatly remiss in not disciplining that employee. However, Stahl implemented her own remedy by deliberately "smacking" the speaker. If Stahl had been a male employee "smacking" a female co-worker, I am highly skeptical the Commission would have awarded him unemployment benefits.

For the foregoing reasons, I would find the Commission erred in determining Stahl was eligible for unemployment benefits, and I would reverse the decision of the Commission and remand for further proceeding consistent with this opinion.

_____
Lisa P. Page, Judge