**Arthur D. HODEL, Petitioner–
Respondent,**

v.

**DIRECTOR OF REVENUE, STATE
OF MISSOURI, Respondent–
Appellant.**

**No. 23986.**

Missouri Court of Appeals,
Southern District.

Sept. 28, 2001.

Motion for Rehearing and Transfer Denied
Oct. 19, 2001.

Application for Transfer Denied
Dec. 18, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joel E. Anderson, Asst. Atty. Gen., Jefferson City, for Appellant.

Erik A. Bergmanis, Troy L. Dietrich, Bergmanis & McDuffey, Camdenton, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

The Director of Revenue ("Director") suspended the license of Arthur Hodel ("Hodel") to operate a school bus for one year pursuant to § 302.276, RSMo Cum. Supp.1997. Director based the suspension upon notification received from Hodel's employer, Camdenton R–III School District, that Hodel tested positive for marijuana during a random drug test.

Hodel petitioned the circuit court for review of Director's decision pursuant to § 302.311, RSMo 1994. After a trial de novo, the court entered a judgment that set aside the suspension and ordered Director to remove the suspension from Hodel's record. Director appeals and alleges two instances of trial court error. We affirm.

## STATEMENT OF FACTS

On the morning of December 1, 1998, Hodel drove his normal bus route and upon returning to the school, he was asked by the director of transportation for the school district to submit to a drug test. Hodel provided a urine sample to the school nurse, but noticed the "testing collection procedure wasn't what [he] was used to." After providing the specimen, Hodel was ultimately notified by an out-of-state testing firm that he tested positive for marijuana. On December 10, 1998, Hodel sought an additional test conducted by a local doctor which reported negative for marijuana. The testing company notified the school of its test results. In turn, the school notified Director of Hodel's failed test, per § 302.275, RSMo Cum. Supp.1997. Based on the notification, Director suspended Hodel's license to operate a school bus. Hodel's employment was then terminated on December 30, 1998.

Hodel timely petitioned the circuit court for review of Director's decision. At trial, Director presented no live testimony, but instead relied upon five pages of certified records. Among those records was the report that recited Hodel tested positive for marijuana. On the other hand, Hodel testified that he had not smoked or otherwise used marijuana for over twelve years and that the sample given to the nurse was somehow mishandled. The court allowed Hodel to put in evidence the results of the second drug test. This occurred over Director's timely objection.

The trial court, in adjudging reinstatement of Hodel's license, found the "test results were wrong" and recited that it believed Hodel's testimony that he had no marijuana in his system at the time of the first test.[1]

---

1. Specifically, the judgment recited: "This case is primarily decided on the credibility of Petitioner.... [T]he court believes Petitioner when he states there was no drug in his system at the time of testing. In this precise case, the drug tests results were wrong."

Director appeals, claiming the trial court erred in setting aside the suspension because Hodel failed to rebut Director's *prima facie* case. She further charges the trial court erred when it admitted the results of Hodel's second drug test into evidence.

## STANDARD OF REVIEW

 When Director suspends a license, the driver may apply to the circuit court of his or her county of residence for a de novo review. § 302.311, RSMo 2000.[2] We review the decision of the circuit court rather than the Director's decision. *Silman v. Director of Revenue*, 880 S.W.2d 574, 575–76[1] (Mo.App.1994). The judgment of the circuit court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo.banc 1976).

## POINT I: SUFFICIENCY OF THE EVIDENCE TO SUPPORT JUDGMENT

Director's first point maintains the trial court erred in setting aside the suspension and ordering Director to remove such from Hodel's driving record because Hodel failed to rebut the *prima facie* showing that the suspension was valid. Specifically, Director argues the "avenues of rebuttal are limited to proving that the Director did not receive notice or that the driver did not fail the test, not that a driver could attempt to prove a drug test result was wrong."[3] In the alternative, Director argues "even if inaccuracy of a test result is a matter that can be proved in rebuttal,"

the evidence does not support the trial court's judgment because Hodel testified he had not "smoked" marijuana. In part, Director argues the court's finding that Hodel had not "consumed" marijuana lacked evidentiary support. The thrust of this argument is that marijuana consumption could be accomplished in some manner other than smoking. Director's argument lacks merit.

In pertinent part, § 302.276 provides: "If the director ... receives notification of a failed drug ... test pursuant to section 302.275 and the director makes a determination that such test was failed, then the director shall suspend the school bus permit...." Pursuant to § 302.275, an employer of a school bus driver "shall notify the director ... that the person has failed to pass any drug ... test *administered pursuant to the requirements of any federal or state law, rule, or regulation* regarding the operation of a school bus." (Emphasis added.) The applicable state regulation requires that all school bus drivers licensed under Missouri law shall "[u]ndergo testing for drug and alcohol use/abuse, *in compliance with laws.*" 5 CSR § 30–261.010(2)(A)(3) (emphasis added).

The phrase "in compliance with laws" in 5 CSR § 30–261.010(2)(A)(3) refers to federal regulations adopted by the Department of Transportation and Federal Motor Carrier Safety Administration. Specifically, 49 C.F.R. Parts 382 and 383 require that employers of school bus drivers follow the drug testing procedures found in 49 C.F.R. Part 40. *See, e.g.*, 49 C.F.R. § 40.383.3; 49 CFR § 382.103; 49 C.F.R.

---

**2.** All further statutory references are to RSMo 2000, unless otherwise indicated.

**3.** This court wholly fails to understand Director's assertion in this regard, and Director has cited no authority for this proposition. The test result report can be either negative, positive, or incomplete. Logically, when a driver attempts to show that he or she did not fail the test (as Director admits is permissible), one way to accomplish this would be to show the result was wrong.

§ 382.105. The drug testing procedure mandated by 49 C.F.R. Part 40 includes specific directives relating to the collection process. *See* 40 C.F.R. § 40.23 and § 40.25.

■ Here, Hodel adduced evidence from which the court could have found that the person who collected the sample did not comply with mandated collection procedure and, therefore, the positive test result was faulty. Hodel testified he had a "feeling that some of [the sample] might have been mishandled" because the procedure this time was not "what [he] was used to." Hodel explained he was familiar with the appropriate collection procedure because he had undergone eighteen separate drug tests before the instant one and had passed them all. He testified that the person who received his urine sample and poured it into sample bottles did not properly seal the bottles.[4] Hodel also recounted he was not asked to identify the bottles by initialing them as had always been required in the past.[5] Moreover, Hodel expressly denied smoking marijuana at any time in the last twelve years. When asked if he knew *"any reason* why [he] would have failed this drug test[,]" Hodel answered, "No, sir." (Emphasis added.) This was evidence from which the court could reasonably have inferred Hodel had not "consumed" marijuana, either by smoking it or in any other manner. Moreover, this was evidence the trial court could have used to discount the failed test report, either because of concerns about contamination of the unsealed samples, or the possibility that the sample tested was not Hodel's urine as it was not identified via his initials.[6]

■ In the Director's certified records admitted as evidence at trial was a "Controlled Substance Testing Information Form." This is the report indicating Hodel failed the drug test sent to his employer. At the bottom of the form, the following appears: "Note: This document complies with the rules outlined in 49 C.F.R. Pt. 40." Also contained in these records is a facsimile sent by the school to the Department of Revenue. This form certified that Hodel failed a drug test, and this test was "administered pursuant to the requirements of any federal or state law, rule or regulation regarding the operation of a school bus." Assuming *arguendo* the introduction of these documents into evidence was sufficient to make a *prima facie* showing of Director's case, Director entirely fails to establish why Hodel's testimony did not effectively rebut Director's evidence.[7]

---

**4.** In relevant part, 49 C.F.R. § 40.25(f)17 provides: "Both the individual being tested and the collection site person shall keep the specimen in view at all times prior to its being sealed and labeled. As provided below, the specimen shall be sealed (by placement of a tamperproof seal over the bottle cap and down the sides of the bottle) and labeled in the presence of the employee."

**5.** 49 C.F.R. § 40.25(f)(20) provides: "The individual shall initial the identification label on the specimen bottle for the purpose of certifying that it is the specimen collected from him or her."

**6.** We have not ignored the "Federal Drug Testing Custody and Control Form" wherein Hodel certified under "Step 4" that he provided an unadulterated specimen which "was sealed with a tamper-evident seal in [his] presence[.]" Whether this version of the events is correct or whether his trial testimony is correct was a matter for the trial court to determine. *State v. Jackson,* 643 S.W.2d 74, 77–78 (Mo.App.1982).

**7.** *Prima facie* evidence is such evidence which does not necessarily compel a verdict for the party whose contention it supports, but " 'is sufficient to satisfy the burden of proof to support a verdict in favor of the party by whom it is introduced when not rebutted by other evidence.' " *State ex rel. State Dept. of*

The test result form which recited Hodel failed a drug test was based on the opinion of an expert, i.e., the doctors or technicians who tested the sample. The report form also recited the "document" complied with the federally established drug-testing guidelines. In essence, the report was a statement of an expert that Hodel had the presence of marijuana in his system when he submitted to the drug test, and this opinion was based on the test of Hodel's urine. On the other hand, Hodel's testimony directly contradicted the expert's opinion, i.e., he did not have marijuana in his system when he took the drug test. Hodel buttressed his claim on the fact he had not smoked marijuana in over twelve years, and there was no reason the test should be positive, i.e., he had not otherwise consumed marijuana in over twelve years. Moreover, Hodel sought to impeach the expert opinion by testifying that the collection process was faulty.

■■■ Contrary to what Director seems to argue, the trial court was "not bound" by the expert opinion presented via the test report.

"The testimony of an expert is to be considered like any other testimony, is to be tried by the same test and receive just so much weight and credit as the jury (or judge) may deem it entitled to when viewed in connection with all other circumstances. There is no logical distinction between expert opinion testimony and fact testimony and the values of both are to be measured by precisely the same standards. The rule is not different even though the expert evidence is uncontradicted."

*Beardsley v. Beardsley,* 819 S.W.2d 400, 403[3] (Mo.App.1991) (citations omitted). Even though one party relies on written evidence and the other party on oral testi-

mony, this fact goes only to the ultimate question of weight of the evidence. *Duffy v. Barnhart Store Co.,* 202 S.W.2d 520, 527[9] (Mo.App.1947).

■ When determining sufficiency of evidence pursuant to the *Murphy v. Carron* standard, appellate courts accept as true the evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence. *Jarrell v. Director of Revenue,* 41 S.W.3d 42[8] (Mo.App. 2001). Here, the trial court expressly stated it believed Hodel's testimony as to the ultimate issue of fact, i.e., the presence of marijuana in his system at the time of the drug test, and chose to give Hodel's testimony more weight than he gave the written report of an expert. This was the trial court's prerogative, and we, as an appellate court, defer to that determination. *Thomas v. Lloyd,* 17 S.W.3d 177, 187 (Mo. App.2000).

In its judgment, the trial court found the test results were wrong, or to put it in terms the Director deems permissible, Hodel did not fail the test. The judgment is supported by substantial evidence, i.e., Hodel's testimony, and is not against the weight of the evidence. Point denied.

*POINT II: ALLEGED ERROR IN ADMITTING EVIDENCE OF SECOND DRUG TEST?*

In her second point, Director charges the trial court erred when it admitted the results of Hodel's second drug test into evidence over Director's objection. Director argues the report was inadmissible because Hodel did not lay a proper foundation for its admission, i.e., Hodel failed to show that "the expert making the declaration would have been competent to testify live to the declarations." Director insists Hodel's expert was not competent to render an opinion that Hodel had no marijua-

*Pub. Health and Welfare v. Hogg,* 466 S.W.2d 167, 170[2] (Mo.App.1971) (citation omitted).

na in his system when first tested because such testimony was based on the expert's testing of a urine sample taken ten days after the failed test.

 In addressing this point, we assume *arguendo* that the subject test results were erroneously admitted as evidence at trial.[8] The erroneous admission of evidence is rarely, if ever, grounds for reversal in a court-tried case. *Mullenix–St. Charles Props. v. St. Charles*, 983 S.W.2d 550, 557[12] (Mo.App.1998). In fact, it is "well-nigh impossible to predicate reversal on the erroneous admission of evidence." *In Interest of H.J.P.*, 669 S.W.2d 264, 272 (Mo.App.1984). Such is the case because we "presume the trial court will sort out the incompetent and irrelevant and base its decision upon the competent and relevant evidence." *Mullenix–St. Charles*, 983 S.W.2d at 557[13]. This court on review considers only the evidence that was properly admitted and ignores that which was improperly admitted. *Keen v. Dismuke*, 690 S.W.2d 822, 825[4] (Mo.App.1985). If other competent evidence supports the judgment, the admission of improper evidence is considered harmless error. *Mullenix–St. Charles*, 983 S.W.2d at 557[14]. To warrant reversal, it must also be shown that the improper evidence played a critical role in the trial court's decision. *Blackburn v. Richardson*, 849 S.W.2d 281, 292[30] (Mo.App. 1993).

 As shown under Point I, Hodel's testimony standing alone was substantial evidence sufficient to support the judgment. Although the second test result was mentioned in the judgment, there is no indication it played a "critical role" in the trial court's decision. To the contrary, the trial court expressly stated its decision was based "primarily on the credibility of [Hodel]." *See* n. 1. Error in the admission of the second drug test, if any, was harmless. Point denied.

The judgment of the trial court is affirmed.

MONTGOMERY, J. and BARNEY, C.J., CONCUR.

---

8. It is unclear from the record whether these results were ultimately admitted into evidence. After Director made a lengthy objection, the court stated: "For purposes of this record, [the results] are admitted over objection, subject to a later determination that [they are] admissible on the grounds submitted by [Director].... But for purposes of the current time, the exhibit is admitted over objection, subject to a later determination that it should not be admitted based upon the objections submitted by [Director]." Neither party states whether this "later determination" was ever resolved.