

# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| VAUGHN WATTREE, | ) | |
| | ) | **WD86847** |
| Appellant, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | September 17, 2024 |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division Three:  Thomas N. Chapman, Presiding Judge,
Lisa White Hardwick, Judge, and Alok Ahuja, Judge**


Vaughn Wattree ("Wattree") appeals *pro se* from a decision of the Labor and Industrial Relations Commission (the "Commission") which affirmed and adopted a decision of the Appeals Tribunal of the Division of Employment Security.  The Appeals Tribunal found that Wattree had failed to timely appeal a notice that he had never received regarding a determination by a deputy of the Division of Employment Security (the "Division") that he had been overpaid benefits due to fraud on his part.  The Commission's decision is reversed, and the cause remanded for further proceedings.

**Background**

Wattree applied for unemployment benefits for numerous weeks in 2020 and 2021. The Division of Employment Security (the "Division") determined that Wattree was eligible for unemployment benefits for numerous weeks in 2020 and 2021. Wattree was paid benefits for numerous weeks in 2020 and 2021.

On December 20, 2022, the Division conducted an audit. A deputy of the Division determined that Wattree had been overpaid benefits in the total amount of $1,280.00. The deputy determined that Wattree had been overpaid $320.00 for four separate weeks and listed as the "claim week dates" October 24, 2020, February 20, 2021, April 10, 2021, and June 12, 2021. The Division determined that the cause of the overpayment was Wattree's fraud in failing to report wages he earned during those four claim weeks. In other words, the Division determined that he had been paid $320.00 in benefits for each of those four weeks which he would not have been paid if he had accurately reported his earnings for those four weeks.

The record on appeal contains a copy of a notice of an Overpayment and Penalty Determination that lists a mailing date of "12-21-22."

A Division exhibit following the transcript on appeal contains a document labeled "Overpayment Details." This document lists the four "claim week dates" for which the Division determined that Wattree was overpaid $320.00 in benefits. For the claim week running from October 18 through October 24 of 2020, the document indicated that Wattree reported $0.00 in earnings, and that his "Earnings Per Audit" were $0.00 and that

2

he was therefore overpaid in the amount of $320.00.[1]  For the claim week running from February 14 through February 20 of 2021, the document indicated that Wattree had reported $0.00 in earnings and that his "Earnings Per Audit" were $963.00, such that he was overpaid in the amount of $320.00.  For the claim week running from April 4 through April 10 of 2021, the document indicated that Wattree had reported $0.00 in earnings and that his "Earnings Per Audit" were $788.50, such that Wattree was overpaid his benefit amount of $320.00 for that week.  For the week of June 6 through June 12 of 2021, the document indicated that Wattree reported $0.00 in earnings, and that his "Earnings Per Audit" were $802.75, such that Wattree was overpaid his benefit amount of $320.00 for that week.

Division exhibits following the transcript on appeal indicate that the deputy's determination was based on information provided by Wattree's employer, Centerline Drivers, LLC ("Centerline"), in response to a questionnaire directed to Centerline.  The questionnaire in the exhibits lists responses to questions that took the following general form: "Please provide the hours and gross wages for the week ending XX/XX/XXXX?"  The questionnaire did not specify whether the information sought related to earnings or payment for prior earnings.  The questionnaire requested responses for the weeks ending 10/17/2020, 10/24/2020, 01/02/2021, 01/09/2021, 02/20/2021, 04/10/2021, 04/24/2021,

---

[1] The Division apparently determined that Wattree had failed to report earnings during a week in which the audit conducted by the Division revealed that he had no earnings.  Although this opinion reaches only the timeliness determination, it is impossible not to recognize this obvious error on the face of this document.

05/01/2021, 05/08/2021, 05/15/2021, 05/22/2021, 05/29/2021; 06/05/2021, and 06/12/2021.  The employer responded "n/a" to each of the questions, except for the weeks ending 10/17/2020, 02/20/2021, 04/10/2021, and 06/12/2021.  For those four weeks, Centerline reported that Wattree had worked and earned wages.

At some point, the Division apparently mailed to Wattree two assessments by certified mail.[2]

On April 11, 2023, Wattree sent a letter to the Division indicating that he had received an assessment notice on March 30, 2023 by certified mail regarding overpayment benefits.  The letter indicated that Wattree wished to appeal because he would never intentionally do anything to hinder his receipt of benefits.

Wattree sent further correspondence to the Division in June of 2023, indicating that he had been in correspondence with Division staff.  The letter indicated that Wattree first learned of the issue via the certified assessment letter that had been retrieved from the post office.  Wattree indicated that he filed his appeal promptly, as soon as learning of the issue.

In the letter, Wattree indicated that the fraud accusations had caught him by surprise and that he was doing his best to gather the evidence necessary to clear his name by any reliable source he could gather, but that this task was made difficult as the exonerating evidence was from years prior.  Wattree included in the letter over 40 pages

---

[2] These assessments are not contained in the record on appeal.

of his bank records that showed his deposits for certain dates.  He also included a brief letter describing why he thought the records would clear him from any wrongdoing.

The Division sent to Wattree a "Notice of Telephone Hearing" before the Appeals Tribunal.  The notice listed the issues that would be addressed at the hearing:

**ISSUE(S) FOR THIS HEARING:**
288.380, RSMo: Is the claimant overpaid benefits because of a willful failure to report all earnings or facts?  Should the claimant be assessed a penalty in this matter?

288.070.6, 288.070.10, RSMo: Timeliness of the appeal.[3]

The telephone hearing before the Appeals Tribunal referee took place on September 19, 2023.  Four different cases were the subject of the appeal, including overpayment determinations and assessments.[4]  Wattree provided testimony under oath.  Aside from the Division referee, no one from the Division participated at the hearing.  The Division referee introduced the Division's evidence into the record.  During the hearing, the referee indicated to Wattree that it appeared that two overpayment determinations had been mailed to him on December 21, 2022, and asked if Wattree had any evidence to show that those mailing dates were incorrect.  Wattree disagreed that the mailing dates were correct and testified that he never received those determinations.  He

---

[3] Despite listing two statutory provisions as the applicable statutes governing timeliness in the Notice of Telephone Hearing, the Appeals Tribunal Decision ultimately concluded that these listed provisions did not govern the timeliness of Wattree's appeal from the overpayment by fraud determination.

[4] The other determination and the assessments are not contained in our record on appeal.  From the transcripts of the hearing, it appears that the second determination as well as the assessments were consequences of the determination that Wattree had been overpaid by fraud.

then pondered how he could have evidence that the mailing dates were incorrect when he did not receive that correspondence. Wattree testified that he received a certified letter that his wife had to pick up for him at the post office (in apparent reference to the assessment notice that he stated he received on March 30, 2023 by certified mail at the post office in his first letter of appeal). Wattree testified that he would often be working away from home in his job as a truck driver, and that his wife always checked his mail and notified him. He did not know why he was not receiving his mail and wondered if mail previously sent to Wattree by the Division had been returned to the Division such that the Division felt it was necessary to send him a certified letter. Wattree testified that the only way he became aware of the accusations against him was through the certified letter that his wife had to retrieve from the post office, and that he met the deadline to appeal that was listed on the certified letter.

On the subject of the overpayment determinations, the referee indicated to Wattree that the overpayment determinations were the result of discrepancies between Wattree's reports of his earnings and Centerline's reports of his earnings. Wattree and the referee discussed possible sources of the discrepancies while looking at calendars. Wattree suggested that the referee look at the evidence that he submitted to the Division prior to the hearing. Wattree indicated that he had been instructed by Division staff that payroll records from his employer would be better evidence than the bank records that he had previously submitted. Wattree testified that he had contacted his employer and sent to the Division "a certified documentation of a payroll registry." Wattree testified that he had

6

called both of the two days prior to the hearing to make sure that the documents were uploaded to the meeting, and that he had been informed that the documents would be uploaded for the hearing. The referee acknowledged that two documents had been uploaded the day prior to the hearing, with one document being eight pages long and one document seven pages long, and that the documents were a payroll register. The referee took administrative notice of all of the documents.[5]

Wattree then explained that the payroll registry showed that he was paid on 10/09/2020 for the claim week ending 10/3/2020, and that he was paid on 10/16/2020 for the claim week ending 10/10/2020. Wattree then pointed out that the pay registry did not show him working again until the week ending 10/31/2020, such that the payroll registry indicated that Wattree had no earnings for the claim weeks ending 10/17/2020 or 10/24/20, and that the Division's accusation that he failed to report income from the week ending 10/24/2020 was false. Wattree similarly walked the Appeals Tribunal referee through the remaining claim week dates on which Wattree was accused of fraudulently failing to report income. With each claim week ending date, Wattree explained how the pay ending dates on the registry established that he had not earned income from his employer on the weeks he was accused of failing to report his earnings.

---

[5] These documents are not contained in the record following the transcript on appeal where these documents should appear along with the other evidence in the case. However, excerpts matching the description of these documents were attached to Wattree's letter of appeal to the Commission.

7

The payroll registry documents that were actually submitted to the Division, uploaded for the hearing, noticed by the Appeals Tribunal referee, and discussed at length in the transcripts are not contained in our record on appeal following the transcript on appeal where the evidence submitted at the hearing is located. However, four pages from the payroll registry that were before the referee and which match the description of the payroll registry as discussed in the transcripts were attached by Wattree to his subsequent appeal to the Commission.[6] Based on the information discussed at the hearing, these four pages appear to be the pages from the documents submitted to the Division prior to the hearing that contain information relevant to the four claim week dates in dispute.

These documents, if they accurately depict Centerline's payroll registry, indicate that Wattree did not earn wages during the claim weeks ending 10/24/2020, 2/20/21, 4/10/21, or 6/12/2021. These documents, if they accurately depict Centerline's payroll registry, also suggest that Centerline's prior responses to the questionnaire regarding Wattree's wages were incorrect. In other words, these documents, if they accurately depict Centerline's payroll registry, would establish that Wattree was falsely accused of fraud and was wrongfully determined to have been overpaid or to have engaged in fraud.

The Appeals Tribunal issued a decision on September 21, 2023. The Appeals Tribunal found that a deputy of the Division mailed to Wattree on December 21, 2022, a

---

[6] The Commission apparently understood Wattree's attachment of excerpts of these documents as a request to submit additional evidence after the Appeals Tribunal hearing. However, these documents were presented to the Division prior to the hearing, were expressly noticed by the Appeals Tribunal referee, and the information concerning the relevant dates was discussed in detail at the hearing.

determination that Wattree was overpaid benefits by reason of fraud. The Appeals Tribunal found that Wattree filed an appeal on April 11, 2023. The Appeals Tribunal found that Wattree did not file the appeal sooner because he had not received the determination.

The Appeals Tribunal ultimately concluded that Wattree's appeal was untimely, and that the statutes do not provide a good-cause provision to extend the deadline for late appeals from overpayment determinations.

Wattree appealed to the Commission. The Commission affirmed and adopted the decision of the Appeals Tribunal.

Wattree now appeals to this court.

## Standard of Review

Appellate review of decisions of the Commission is governed by article V, section 18 of the Missouri Constitution and section 288.210.[7] *Ward v. Div. of Emp. Sec.*, 600 S.W.3d 283, 286 (Mo. App. W.D. 2020). Article V, section 18 of the Missouri Constitution was crafted in furtherance of the separation of powers with the obvious purpose and requirement "that the judiciary stand as an independent check against abuse by the executive branch when it undertakes a judicial or quasi-judicial function." *See Spire Missouri, Inc. v. Pub. Serv. Comm'n*, 618 S.W.3d 225, 232 (Mo. banc 2021). Pursuant to article V, section 18, judicial review of administrative findings and decisions

---

[7] Statutory references are to RSMo 2016, as updated.

9

that are judicial or quasi-judicial and affect private rights "shall include the determination whether the same are authorized by law, and, in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18; *Spire Missouri*, 618 S.W.3d at 231.

Questions of law are reviewed *de novo*. *Difatta-Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008).

In determining whether a finding or decision is supported by competent and substantial evidence upon the whole record, a reviewing court considers whether the administrative agency "could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it." *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012) (quoting *Wood v. Wagner Elec. Corp.*, 197 S.W.2d 647, 649 (Mo. banc 1946)). The reviewing court ***does not*** view the evidence and inferences in the light most favorable to the administrative decision. *Spire Missouri*, 618 S.W.3d at 231. Rather, "a court reviewing factual findings by an administrative agency must consider all of the evidence that was before the agency and all of the reasonable inferences that may be drawn from that evidence, including the evidence and inferences that the agency rejected in making its findings." *Seck v. Dep't of Transp.*, 434 S.W.3d 74, 79 (Mo. banc 2014). This is not to suggest that a reviewing court is authorized to substitute its own judgment for that of the agency or to make factual findings in the first instance. *Ferry v. Bd. of Educ. of Jefferson City Pub. Sch. Dist.*, 641 S.W.3d 203, 206 (Mo. banc 2022). However, if, after reviewing the whole record, the reviewing court is

10

convinced that the administrative agency's finding or decision is not supported by competent and substantial evidence, or is against the overwhelming weight of the evidence, then the finding or decision may be reversed. *See Spire Missouri*, 618 S.W.3d at 231-32; *see also Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-223 (Mo. banc 2003)). This approach grants an appropriate measure of deference to the agency's role as finder of fact, while also adhering to the independent responsibility entrusted to the judiciary by the people of Missouri in the Missouri Constitution. *Spire Missouri*, 618 S.W.3d at 232; Mo. Const. art. V, § 18.

### Briefing Deficiencies

Before addressing Wattree's arguments, we note that his statement of facts and argument fail to contain references to the record on appeal, as required in Rule 84.04(c) and Rule 84.04(e) respectively. His brief does not include a separately designated point relied on, as required under Rule 84.04(d); nor a statement of preservation, as required under Rule 84.04(e). "Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Johnes v. Div. of Emp. Sec.*, 669 S.W.3d 344, 349 (Mo. App. W.D. 2023) (citation omitted). The deficiencies in Wattree's brief render his appeal subject to dismissal. However, it is our preference to decide an appeal on the merits where we can understand the appellant's argument. *Id.* In this matter, it is clear that Wattree is arguing that he did not receive proper notice of the overpayment by fraud determination.

11

Wattree makes further arguments that he presented proof to the Division and the Appeals Tribunal that he did not work during the weeks that he was accused of working and failing to report his earnings. However, that question is not before this Court, as "[o]ur review is limited to those issues that were determined by the Commission in its decision." *Miller v. Div. of Emp. Sec.*, 670 S.W.3d 444, 449 (Mo. App. W.D. 2023) (citation omitted). In this matter, the Commission affirmed and adopted the decision of the Appeals Tribunal, which determined that Wattree's appeal of the deputy's determination that he was overpaid by reason of fraud was untimely. Accordingly, the only issue properly before this court is whether his appeal of the overpayment by fraud determination was timely.

**Analysis**

Wattree argues that he did not receive proper notice of the determination that he was overpaid by fraud. Regarding the statutory notice requirements, section 288.380.9(2) addresses the time to appeal a determination of overpayment by fraud and provides:

> Unless the individual or employer within thirty calendar days after notice of such determination of overpayment by fraud is either delivered in person or mailed to the last known address of such individual or employer files an appeal from such determination, it shall be final. Proceedings on the appeal shall be conducted in accordance with section 288.190.

Thus, Wattree had thirty calendar days from the date that notice was mailed to his last known address with which to file an appeal of the overpayment by fraud determination.[8]

---

[8] Missouri courts have previously determined that there is no good cause exception to overpayment determinations pursuant to section 288.380. *See Kline v. Div. of Emp. Sec.*, 662

12

The Appeals Tribunal found that the Division mailed Wattree an overpayment by fraud determination on December 21, 2022, which started the thirty-day appeal window.

However, as discussed below, this finding of the Commission and the Appeals Tribunal – that the notice was mailed on December 21, 2022 – was not supported by competent and substantial evidence upon the whole record. Absent compliance with the notice procedures of section 288.380.9(2), Wattree's thirty-day window to appeal could not open and certainly could not close as found by the Appeals Tribunal and the Commission. Accordingly, the Commission's decision must be reversed.

In this matter, the Appeals Tribunal referee found that the Division mailed to Wattree a notice of overpayment by fraud on December 21, 2022. The evidence in the record in support of this finding was a copy of an unsigned "Overpayment and Penalty Determination" notice that listed a date of mailing as December 21, 2022. The record did not include an affidavit or postal receipt or other evidence that the mailing of the notice actually occurred. No one from the Division participated in the hearing aside from the referee serving as neutral arbiter, and thus there was no testimony provided at the hearing regarding the mailing of the notice.

Missouri courts have long found that the presence of a copy of a letter in a legal file falls short of competent and substantial evidence to support a finding that a letter was

S.W.3d 158, 162 (Mo. App. E.D. 2023); *Poljarevic v. Div. of Emp. Sec.*, 676 S.W.3d 521, 524 (Mo. App. E.D. 2023); *Marx v. Div. of Emp. Sec.*, 666 S.W.3d 252, 258 (Mo. App. E.D. 2023); *Mujakic v. Div. of Emp. Sec.*, 663 S.W.3d 501, 505 (Mo. App. E.D. 2023). Wattree makes no arguments that these courts have incorrectly interpreted section 288.380.

indeed mailed on a particular date. *See Boyd v. Div. of Emp. Sec.*, 687 S.W.3d 44, 49-50 (Mo. App. E.D. 2024); *see also Weston Transp., Inc. v. Sharp*, 926 S.W.2d 219, 221 (Mo. App. W.D. 1996), *overruled in part on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003); *Saveway Gas & Appliance, Inc. v. Indus. Comm'n of Missouri*, 552 S.W.2d 76, 78 (Mo. App. S.D. 1977).

Although not specifically addressed by *Boyd* or *Weston*, and, although not addressed in the Appeals Tribunal's decision, we note that section 288.245 provides: "The records of the division shall constitute prima facie evidence of the date of mailing or the date of electronic transmission of any notice, determination or other paper mailed or electronically transmitted under this chapter." The General Assembly did not provide a definition for "prima facie evidence."

Generally, "prima facie evidence" is a legal phrase long-utilized by courts and legislative bodies that has been defined and described as:

> Evidence that will establish a fact or sustain a judgment unless contradictory evidence is produced.
>
> "The legislative branch may create an evidential presumption, or a rule of 'prima facie' evidence, i.e., a rule which does not shut out evidence, but merely declares that certain conduct shall suffice as evidence until the opponent produces contrary evidence." John H. Wigmore, *A Students' Textbook of the Law of Evidence* 237 (1935).

*Black's Law Dictionary* (12th ed. 2024). Missouri courts have similarly described the phrase: "*Prima facie* evidence is such evidence which does not necessarily compel a verdict for the party whose contention it supports, but 'is sufficient to satisfy the burden

14

of proof to support a verdict in favor of the party by whom it is introduced when not rebutted by other evidence.'" *See Hodel v. Dir. of Rev.*, 61 S.W.3d 274, 278 n.7 (Mo. App. S.D. 2001) (quoting *State ex rel. State Dep't of Pub. Health & Welfare v. Hogg*, 466 S.W.2d 167, 170 (Mo. App. S.D. 1971)).

However, prima facie evidence is not conclusive evidence. *See id.*; *see also Cavic v. Missouri Rsch. Laboratories, Inc.*, 416 S.W.2d 6, 9 (Mo. App. S.L.D. 1967). Prima facie evidence may be rebutted when an opposing party presents substantial controverting evidence. *Kellogg v. Murphy*, 164 S.W.2d 285, 293-94 (Mo. 1942). When rebutted by substantial controverting evidence, the prima facie status of the evidence falls away, and the evidence must be evaluated by the trier of fact against the contrary evidence according to its actual evidentiary value. *See id.*

In this matter, Wattree presented substantial controverting evidence to rebut the notation in the Division's records regarding the December 21, 2022 mailing date. Wattree testified that he never received the overpayment by fraud determination that was supposedly mailed to him. The Appeals Tribunal referee found this testimony credible in finding that Wattree never received the overpayment by fraud determination. The record contains further evidence that serves to weaken any inference that a notation in the Division's records was unimpeachable. The "Overpayment Details" contain an error that is obvious on the face of the document. Wattree was determined to be overpaid due to his own fraud by failing to report his earnings for the week ending October 24, 2020. However, the "Overpayment Details" clearly show that the Division's own audit revealed

15

that Wattree had no earnings for that week. The fact that this error is obvious on the face of the document, yet remained uncorrected, gives rise to the reasonable inferences that the Division wished to process with haste the overpayment by fraud determination regardless of whether it was accurate and to recover amounts paid to Wattree regardless of whether the amounts constituted an overpayment. This additional evidence allows for the reasonable inference that the reason why Wattree never received the notice of overpayment by fraud was because the notice was never sent.[9]

After the Division's prima facie evidence was rebutted, the actual evidentiary value of the listed mailing date on a document in the Division's records fell below the requisite competent and substantial evidentiary standard in support of a finding that the Division mailed to Wattree a notice of the overpayment by fraud determination on December 21, 2022. *See Boyd*, 687 S.W.3d at 49-50; *see also Weston Transp.*, 926 S.W.2d at 221; *Saveway Gas & Appliance*, 552 S.W.2d at 78. This is particularly true in light of the evidence contained in the whole record.

Our review of the whole record reveals that there was no competent and substantial evidence in support of the Commission's finding that the Division mailed to Wattree a notice of the overpayment by fraud determination on December 21, 2022.

---

[9] There are further reasonable inferences that could be drawn from the Division's recordkeeping. We note several omissions from the record on appeal, such as the omission of the evidence presented by Wattree to the Division prior to the Appeals Tribunal hearing (and which was noticed and discussed in detail at the telephone hearing), which apparently consisted of a certified pay register from his employer that, if accurately depicting the employer's pay register, would indicate that the Division's entire case against Wattree was based on false information.

16

Accordingly, the record indicates that notice of the overpayment by fraud determination was first provided in conjunction with the certified assessment letters, which were mailed in late March of 2023, and which Wattree timely appealed on April 11, 2023. Accordingly, the Commission's decision – that Wattree's appeal of the overpayment by fraud determination was untimely – is reversed.

## Conclusion

The Commission's decision is reversed. The cause is remanded to the Commission for further proceedings on the merits of Wattree's appeal of the overpayment by fraud determination. Efforts should be made to ensure that the evidence that Wattree has previously presented to the Division and to the Appeals Tribunal referee at the hearing, which apparently consisted of a certified pay register from his employer, and which was, for some reason, not included in the record on appeal, is evaluated.

Thomas N. Chapman, Presiding Judge

All concur.

17