

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

VENDTECH-SGI LLC,       )
      )
      Appellant,       )
      )
      v.       )      WD87676
      )
DAVID BENHAM AND DIVISION       )      Opinion filed: July 8, 2025
OF EMPLOYMENT SECURITY,       )
      )
      Respondents.       )

**APPEAL FROM THE LABOR AND
INDUSTRIAL RELATIONS COMMISSION**

Before Division Two: Cynthia L. Martin, Presiding Judge,
Gary D. Witt, Judge and W. Douglas Thomson, Judge

Vendtech-SGI, LLC ("Vendtech") appeals from the decision of the Labor and Industrial Relations Commission ("Commission") awarding David Benham ("Benham") unemployment benefits (the "Award"). Vendtech raises one Point on Appeal, claiming the Commission erred because the facts found by the Commission do not support the Award and/or because there was not sufficient competent evidence in the record to warrant the making of the Award. In support of its claim, Vendtech argues the evidence indicated Benham was discharged for

misconduct at work and he is thus disqualified from receipt of unemployment benefits. Finding no error, we affirm the decision of the Commission.

## Factual and Procedural Background[1]

Vendtech is a business which "contracts with the Department of Homeland Security and the Federal Protective Service to provide security services in the four-state region of Nebraska, Missouri, Iowa, and Kansas." Benham began working as a training instructor, a "trainer," for Vendtech on September 11, 2017. Benham's final day of work at Vendtech was June 7, 2024, when he was discharged from his employment.

Prior to his termination, on March 26, 2024, Benham overheard coworkers discussing an incident involving a possible nude photograph of another coworker being circulated amongst Vendtech employees. In response to what he heard, Benham "sent one text to confirm that it was a real thing before [he] told [his] supervisors about it" because he knew his supervisors were "very busy." The discussion regarding the alleged photograph began spreading throughout the Vendtech staff, and when Vendtech became aware of the "incident," it began a "very extensive investigation" into what transpired. After three months of investigating, Vendtech determined that Benham violated Vendtech's policy against trainers performing supervisory duties by conducting an unauthorized

---

[1] "When reviewing the Commission's decision, we view the evidence objectively and not in the light most favorable to the Commission's decision." *Miller v. Div. of Emp. Sec.*, 670 S.W.3d 444, 447 n.1 (Mo. App. W.D. 2023) (citing *Sanders v. Div. of Emp. Sec.*, 660 S.W.3d 35, 41 (Mo. App. W.D. 2023)).

investigation. Benham continued working while Vendtech conducted its investigation, and until his termination.

Benham filed a claim for unemployment benefits with the Division of Employment Security ("Division"). Vendtech filed a timely protest, indicating that "subsequent to a complaint from an employee, [i]nvestigation revealed [t]hat [Benham] had participated in spreading of [g]ossip [sic] about 2 other employees." The protest also stated, "[Benham] also took it upon himself to begin an investigation, which is outside the scope [of] his job duties." A Division deputy determined that Benham was "not disqualified" from receiving unemployment benefits because his discharge "was not for misconduct connected with work" ("deputy's determination").

Vendtech appealed the deputy's determination to the Appeals Tribunal. An appeals referee held a telephone hearing at which Vendtech and Benham participated.[2] The Appeals Tribunal received documents regarding Benham's claim for unemployment benefits, heard testimony on behalf of Vendtech from the contract manager ("Manager") for the four-state region where Benham worked, and Benham testified on his own behalf.

---

[2] The Appeals Tribunal's Decision provided to this Court stated that Mr. Benham did not participate in the Appeals Tribunal's September 11, 2024 telephone hearing. However, the transcript provided to this Court indicates that the Appeals Tribunal heard testimony from a witness for Vendtech and from Benham, and Benham's testimony is transcribed. Accordingly, we presume that Benham, as the claimant, did participate in the Appeals Tribunal's September 11, 2024 telephone hearing.

3

The Appeals Tribunal issued its decision reversing the deputy's determination on September 13, 2024 ("Appeals Tribunal's Decision"). The Appeals Tribunal's Decision concluded that Vendtech met its burden to prove that Benham was discharged for misconduct connected with work, particularly that Benham "violated the employer's policy by starting an investigation that was not in his job description and gossiping with and among his coworkers." Accordingly, the Appeals Tribunal reversed the deputy's determination and found that Benham was disqualified from earning unemployment benefits.

Benham appealed the Appeals Tribunal's Decision to the Commission. In the letter indicating his intent to appeal, Benham asserted that the Appeals Tribunal's Decision was erroneous because "evidence was presented [to the Appeals Tribunal] that wasn't in [Benham's] discovery packet." To this end, he included in his appeal letter portions of the job description he alleged he received during his employment and portions of the job description Vendtech presented to the Appeals Tribunal, the former stating trainers shall not perform "PSO duties" and the latter stating trainers shall not perform "PSO *or Supervisory* duties."[3] Benham argued that he was never provided the latter job description prohibiting him from engaging in "supervisory" duties. Benham contended that the Commission should reverse the Appeals Tribunal because he did not commit "misconduct" that resulted in his termination.

---

[3] We find no reference in the transcript to exhibits proving Benham's claim regarding these two different job descriptions. However, as discussed below, there was substantial evidence that a clear understanding of a trainer's job description was at issue.

The Commission concluded that Vendtech did not meet its burden of proof of misconduct and found Benham's testimony that he was merely verifying information before reporting it to his supervisors to be credible. Accordingly, the Commission reversed the Appeals Tribunal's Decision (the Award) finding that Benham was not disqualified for unemployment benefits "because the discharge was not for misconduct connected with work." Vendtech appeals.

## Standard of Review

"Section 288.210 governs appellate review of the Commission's decisions in unemployment compensation cases." *Ramirez v. Div. of Emp. Sec.*, 697 S.W.3d 132, 138 (Mo. App. W.D. 2024) (quoting *Boyd v. Div. of Emp. Sec.*, 687 S.W.3d 44, 47 (Mo. App. E.D. 2024)). Section 288.210[4] authorizes this Court to "modify, reverse, remand for rehearing, or set aside" the decision of the Commission if we find:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award. An appeal shall not act as a supersedeas or stay unless the commission shall so order.

Section 288.210. "We are 'not bound by the Commission's legal conclusions or application of law, which we review *de novo*, but we defer to the Commission's

[4] All statutory references are to the Revised Statutes of Missouri (2016) as updated by supplement through the date of Employee's discharge, unless otherwise noted.

factual findings, so long as they are supported by competent and substantial evidence in the record.'" *Ramirez*, 697 S.W.3d at 138 (quoting *Boyd*, 687 S.W.3d at 47). "The Commission may make factual findings and credibility findings contrary to those of the Appeals Tribunal." *Whiteley v. Hale Robinson & Robinson LLC*, 706 S.W.3d 290, 293 (Mo. App. W.D. 2025). We will affirm if the Commission's decision is "supported by competent and substantial evidence upon the whole record." *Shay Mechanical, LLC v. Espey*, 694 S.W.3d 451, 454 (Mo. App. W.D. 2024) (citation omitted).

## Analysis

Employer raises one point on appeal, arguing the Commission erred in awarding Employee unemployment benefits, to-wit:

> [T]he facts found by the Commission do not support the award and/or there was not sufficient competent evidence in the record to warrant the making of the award in that the documentary and testimonial evidence indicated that [Employee] was discharged for misconduct connected with his work, thus disqualifying him from benefits under Section 288.050.2, R.S.Mo., as he was terminated for violating [Employer's] company policy regarding employee conduct when he, without authority, began an investigation into rumors that a PSO's explicit images were being shared among the guards, and also gossiped about other employees in an inappropriate manner.[5]

---

[5] Vendtech's point on appeal is impermissibly multifarious in violation of Rule 84.04(d)(1) and further, is not in proper form. "Rule 84.04 is violated if a point 'groups together multiple, independent claims rather than a single claim of error, and a multifarious point is subject to dismissal.'" *Crisp v. Mo. Sch. for Deaf, Dep't of Elemtary & Secondary Educ.*, 681 S.W.3d 650, 658 (Mo. App. W.D. 2023) (quoting *Kirk v. State*, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017)). "Separate issues should be stated in separate points relied on" because "separate and distinct inquiries . . . require discrete legal analyses." *Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021) (quoting *Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d 279, 283 n.2 (Mo. App. E.D. 1999); *Lollar v. Lollar*, 609 S.W.3d 41, 45 n.4 (Mo. banc 2020)). However, "[i]n our discretion, we may review all, some, or none of a multifarious point relied on." *Crisp*, 681 S.W.3d at 659.

"As a general matter, unemployment benefits are reserved for 'persons unemployed through no fault of their own.'" *Seck v. Dep't of Transp.*, 434 S.W.3d 74, 82 (Mo. banc 2014) (quoting section 288.020.1). Section 288.050.2 provides that a party claiming unemployment benefits "is not eligible for these benefits if he was 'discharged for misconduct connected with the claimant's work.'" *Seck*, 434 S.W.3d at 82 (quoting section 288.050.2). "A claimant has the burden of proving her right to receive unemployment benefits in the first instance, however the employer bears the burden of proving ineligibility due to misconduct." *Whiteley*, 706 S.W.3d at 293 (citing *Seck*, 434 S.W.3d at 82).

Here, Vendtech does not challenge whether Benham has met his "burden of proving his right to receive unemployment in the first instance." Rather, Vendtech's sole point on appeal hinges on its claim that the "evidence indicated that [Employee] was discharged for misconduct connected with his work, thus disqualifying him from benefits under Section 288.050.2, R.S.Mo." In sum, Vendtech's sole claim is that it has borne its burden of proving Benham's ineligibility due to misconduct. We disagree.

Relevant to this case, misconduct is defined by section 288.030.1(23):[6]

_____

Here, although the single broad issue is the same – whether Benham was discharged for misconduct connected with work – Vendtech includes two distinct legal claims in its point. First, that the facts found by the Commission do not support the Award, and second that there was insufficient evidence to warrant making the Award. As such, this point is multifarious. In the present appeal, Vendtech's argument focuses on whether the facts found by the Commission support the Award. We follow suit and exercise our discretion to address the merits of the deficient point on appeal in that regard.

[6] In its entirety, section 288.030.1(23) provides:

(23) "**Misconduct**", only as the term is used in this chapter, [means] conduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:

. . .

(e) A violation of an employer's rule, unless the employee can demonstrate that:

a. He or she did not know, and could not reasonably know, of the rule's requirements;

b. The rule is not lawful; or

c. The rule is not fairly or consistently enforced.

Thus, a "rules violation" can be misconduct. However, there are specific exceptions

to the "rules violation as misconduct" determination. These exceptions, if proven

---

(23) "**Misconduct**", only as the term is used in this chapter, [means] conduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:
 (a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;
 (b) Conduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer;
 (c) A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such absences are protected by law;
 (d) A knowing violation of a state standard or regulation by an employee of an employer licensed or certified by the state, which would cause the employer to be sanctioned or have its license or certification suspended or revoked; or
 (e) A violation of an employer's rule, unless the employee can demonstrate that:
 a. He or she did not know, and could not reasonably know, of the rule's requirements;
 b. The rule is not lawful; or
 c. The rule is not fairly or consistently enforced.

by the employee, generally work to defeat the rules violation as a reason to deny unemployment compensation for misconduct purposes.

Here, testimony was received from Manager that Benham was terminated for "conducting an investigation outside the purview of his . . . job performance as an instructor and not notifying management." Manager testified that, as a trainer, Benham is considered a member of Vendtech's "key personnel, not supervisors," and supervisors did investigations, not key personnel. However, Manager conceded that Benham "believed that" "he had the authority to look into it." Benham agreed, testifying that "my job duties were never outlined to me. I was never given a list of my job duties. They actually changed rather frequently based on what needed to be done around the office." Additionally, during Benham's testimony, he explained the confusion surrounding his job responsibilities, stating, "It was far less clear what I wasn't allowed to do than what I was allowed to do."

Benham testified that he reached out to a single coworker with a single text regarding the rumor of a co-employee's nude photograph being circulated amongst the Vendtech staff. Benham explained that he wanted to confirm "that it was a real thing before I told my supervisors about it just to – to – they're very busy[]" and "if [Manager] had to field every [rumor going around], he would have his hands full." Benham testified that if the rumor was confirmed, it needed to be "looked into," so he "tried to confirm it before I set [sic] it up, the chain of command[.]" Further, Benham testified he did not circulate the rumor of a photograph's

9

existence to fellow employees. Rather, he merely sent a single text message before leaving the investigation to his supervisors.

The Commission determined Benham's testimony to be credible, stating in its Order that "claimant was discharged due to allegedly performing an investigation he was not authorized to perform" but determined "[w]e believe the claimant's credible testimony that he was merely verifying the information he had heard was accurate before reporting that information to his superiors." In finding Vendtech had not "met their burden of proof," the Commission further stated that, though "claimant most likely should have reported the rumors to his supervisor without verification," "verifying the rumors does not lead to the conclusion the claimant was performing an unauthorized investigation."

In the context of unemployment benefits, "[w]e distinguish between conduct that justifies termination and misconduct that precludes benefits because misconduct, in this context, is to be construed least favorably to a forfeiture of benefits." *Miller*, 670 S.W.3d at 451 (quoting *Valley v. Div. of Emp. Sec.*, 578 S.W.3d 865, 871 (Mo. App. W.D. 2019)) (internal quotation marks and alteration omitted). "Disqualifying provisions of the unemployment compensation law are to be construed against the disallowance of benefits to unemployed but available workers." *Wayne v. Div. of Emp. Sec.*, 600 S.W.3d 29, 36 (Mo. App. W.D. 2020) (quoting *Scrivener Oil Co. v. Crider*, 304 S.W.3d 261, 268 (Mo. App. S.D. 2010)).

Vendtech argues that the Commission's factual findings can only support a determination that Benham violated company policy, a "rules violation"

constituting misconduct such that Benham would not be eligible to receive unemployment benefits. In support, Vendtech contends that the Commission "appears to give undue weight to Benham's denial during the hearing that he did not investigate the matter." But here, Vendtech forgets that "[w]e are bound by the Commission's factual and credibility determinations." *Esquivel v. Hy-Vee, Inc.*, 498 S.W.3d 832, 836 (Mo. App. W.D. 2016). Essentially, Vendtech's "undue weight" argument seeks to discount the Benham testimony which the Commission specifically found credible and emphasize the testimony Vendtech itself put forth. Vendtech's argument is no more than a "cleverly disguised attempt to re-litigate the conflicting versions of the facts, which we cannot do." *Id.* (quoting *Urban v. Regal Beloit Am., Inc.*, 465 S.W.3d 512, 515 (Mo. App. S.D. 2015)).

Vendtech's contention, that Benham conducted an unauthorized investigation in violation of Vendtech's policy, is clearly defeated by Benham's credible testimony that he merely inquired about the photograph's existence rather than investigated the matter. The Commission determined that Benham's reasoning in this regard was logical, even if it was not the best course of action Benham could have taken. In making such a determination, the Commission heard Benham's credible testimony that he simply intended to confirm a rumor before he "set [sic] it up, the chain of command" because his superiors were "very busy" and could not chase down every rumor. Evidence was also presented of screen shots of text threads between various employees regarding the alleged photograph. The *only* such exhibit Vendtech offered into evidence where a

11

member of the Vendtech staff heard of the alleged photograph *from Benham* was obtained from the single coworker *Benham admitted* texting about such rumor, thus bolstering Benham's testimony that he only texted a single coworker. The rest of the statements reflect the rumor being spread by other members of the Vendtech staff, not Benham. This evidence also supports the Commission's decision.

Further, Benham testified that his "job duties were never outlined," and he "was never given a list of [his] job duties." In fact, Manager conceded that Benham certainly could have believed that "he had the authority to look into it." Such testimony gave credence to Benham's overall testimony and supports the Commission's decision. The Commission's factual findings are supported by competent and substantial evidence in the record.

Vendtech also argues that Benham did not meet his burden to show that a section 288.030.1(23)(e) statutory exception applied to entitle him to unemployment benefits in light of his rule violation constituting misconduct. As stated previously, a "rules violation" can be misconduct, but specific exceptions to the "rules violation as misconduct" determination work to defeat the rules violation as a reason to deny unemployment compensation for misconduct purposes. First, in order to get to this determination, we would have to agree with Vendtech that Benham violated an employer's rule, which we do not. Here, the Commission had no reason to reach this analysis because the Commission concluded that Benham did not commit misconduct in *any* form. Accordingly, the burden never shifted to Benham to establish that a statutory exception applied.

12

*See Esquivel*, 498 S.W.3d at 836 ("the burden shifts to the employee to demonstrate a statutory excuse that operates to remove the rule violation from the definition of misconduct" only "once misconduct in the form of a rule violation is established").

Moreover, in making such argument, Vendtech fails to explain how the very evidence upon which the Commission relied – and found credible – in finding Benham committed *no* rules violation would not support a finding that Benham "did not know, and could not reasonably know, of the rule's requirements," pursuant to section 288.030.1(23)(e)a., one of the statutory exceptions to the finding of a rule violation as "misconduct." *If* the Commission had found Benham committed a workplace rule violation and thereby committed misconduct, which they did not, *then* evidence that his "job duties were never outlined" to him, that "[i]t was far less clear what I wasn't allowed to do than what I was allowed to do[,]" and the concession by Manager that Benham may have "believed that" "he had the authority to look into it" would undoubtedly lend support to a finding that Benham fell into the exception from such a workplace rules violation being misconduct. The Commission did not err in failing to address the statutory exceptions to workplace misconduct.

There was sufficient evidence for the Commission to determine that Benham's actions did not rise to misconduct, as defined by section 288.030.1(23)(e). Accordingly, there was sufficient evidence for the Commission

to determine that Benham was eligible for unemployment benefits. The Commission did not err when it entered the Award.

Point I is denied.

## Conclusion

For the foregoing reasons, the Commission's decision is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

14